■ In the Matter of the Claim of JOHN YANNUCCI, Appellant, v CONSOLIDATED FREIGHTWAYS et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent. [775 NYS2d 193]—

Rose, J. Appeal from a decision of the Workers' Compensation Board, filed April 24, 2002, which, inter alia, ruled that claimant voluntarily withdrew from the labor market and denied him further workers' compensation benefits.

Claimant, a truck driver, struck a curb while operating a tractor trailer, injuring his back and right shoulder. He was out of work six months before returning to a light-duty position performing clerical duties, including filing and answering the telephone. Claimant received workers' compensation benefits while he was on light duty. After eight months in that position, he retired. When the employer raised the issue, among others, of claimant's voluntary retirement, the Workers' Compensation Law Judge ruled that claimant was not entitled to receive workers' compensation benefits after the date of his retirement because he had voluntarily removed himself from the labor market. This decision was affirmed by the Workers' Compensation Board, resulting in this appeal.

"Generally, a claimant who voluntarily withdraws from the labor market by retiring is not entitled to workers' compensation benefits unless the claimant's disability caused or contributed to the retirement" (*Matter of Lombardi v Brooklyn Union Gas Co.*, 306 AD2d 704, 705 [2003] [citation omitted]; *see Matter of De Simone v Consolidated Edison Co. of N.Y.*, 309 AD2d 1032, 1033 [2003]). The issue of voluntary withdrawal is a factual one for the Board to decide and its determination must be upheld if supported by substantial evidence (*see Matter of Gennes v Longwood Cent. School Dist.*, 2 AD3d 1015, 1016 [2003]; *Matter of Lombardi v Brooklyn Union Gas Co., supra* at 705).

In the case at hand, claimant testified that when he returned to the light-duty position, he began experiencing numbness in his right leg, as well as pain in his lower back after sitting for long periods of time and he needed to move around. He stated that he informed his physician, as well as his supervisor, of the problem and that his physician recommended that he consider retiring. He testified that when he decided to retire, he was 55 years of age with 25$^1$/$_2$ years of service and he did not receive any special retirement incentive, disability retirement or Social Security disability benefits. Claimant's supervisor acknowledged that claimant had expressed some discomfort while performing the light-duty position, but stated that claimant did not miss any time from work. He further indicated that claimant was free to take breaks from sitting as needed and the employer had not requested claimant to leave the light-duty position.

Peter Ajemian, claimant's treating physician, initially diagnosed claimant with left and right bilateral impingement syndrome with lumbar strain and lumbar radiculopathy, as well as bulging discs at L4-5 and L5-S1, which he thought rendered claimant completely disabled. Later, after further examination, he cleared claimant for return to light duty with no heavy lifting, bending or carrying. In subsequent examinations, after claimant had returned to light-duty work, Ajemian reported that claimant complained of numbness and tingling down the left leg, back pain and spasm, and pain in his right shoulder. In his testimony, Ajemian concluded that claimant had a 75% permanent partial disability precluding him from sitting, standing, walking or driving for more than one hour at a time. There was also evidence in Ajemian's report, dated shortly before claimant's retirement, that claimant reported that he found it increasingly difficult to perform the light-duty work assigned to him and Ajemian recommended that claimant consider retirement to minimize his pain as much as possible. However, as the

Board noted, Ajemian did not testify that claimant was physically unable to perform the light-duty position.

Noel Kleppel, the physician who examined claimant on behalf of the employer, disagreed with Ajemian's diagnosis of impingement syndrome, stating instead that claimant suffered from lumbosacral sprain with a soft tissue injury of his right shoulder. He stated that claimant was mildly partially disabled and, following his examination shortly after claimant returned to light duty, able to return to work in a modified capacity, although not as a truck driver. His opinion did not change even after his final examination of claimant following retirement, at which time the lumbosacral sprain had resolved. Kleppel opined that claimant could have continued working in the light-duty position if he had not retired.

Inasmuch as the Board is vested with the authority to decide issues of credibility and to draw reasonable inferences from the evidence presented (*see Matter of Baumgarten v New York State Banking Dept.*, 279 AD2d 741, 741 [2001]), it could choose to credit the testimony of Kleppel that claimant was not disabled from performing light-duty work, particularly given the employer's efforts to accommodate claimant and the fact that he lost no time from work during the eight months that he filled the light-duty position (*see Matter of Testani v Aramark Servs.*, 306 AD2d 709 [2003]; *Matter of Scarpelli v Bevco Trucking Corp.*, 305 AD2d 892, 893 [2003]; *cf. Matter of De Simone v Consolidated Edison Co. of N.Y.*, 309 AD2d 1032, 1033 [2003] [conflicting medical evidence of disability resolved in the claimant's favor]). Therefore, we find that substantial evidence supports the Board's determination and we decline to disturb it.

Mercure, J.P., Crew III, Carpinello and Lahtinen, JJ., concur. Ordered that the decision is affirmed, without costs.